UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MORNINGSTAR CARE CTR.
as Authorized Representative of Darlene Huseby,

                          Plaintiff,                     5:15-CV-1470
                                                        (GTS/DEP)
v.

HOWARD ZUCKER, in his official capacity as
the Comm'r of the New York State Dep't
of Health; and KRISTIN M. PROUD, in her
official capacity as the Comm'r of the New York
State Office of Temporary and Disability Assistance,

                          Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

SCHUTJER BOGAR, LLC                             JESSICA S. WINIK FERBER ESQ.
  Counsel for Plaintiff
1426 N. 3rd Street, Suite 200
Harrisburg, PA 17110

ERIC T. SCHNEIDERMAN                            ADELE M. TAYLOR-SCOTT, ESQ.
Attorney General for the State of New York      Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, NY 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this action to recover Medicaid benefits filed by

Morningstar Care Center, as authorized representative of Darlene Huseby ("Plaintiff" or

"Morningstar") against Howard Zucker, in his official capacity as the Commissioner of the New

York Department of Health, and Kristin M. Proud, in her official capacity as the Commissioner

of the New York State Office of Temporary and Disability Assistance ("Defendants"), are

Plaintiff's motion for a declaratory judgment pursuant to Fed. R. Civ. P. 57 (Dkt. No. 20) and

Defendants' motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief

can be granted, failure to join a necessary party, and for lack of subject-matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(6), 12(b)(7), and 12(b)(1) or, alternatively, Defendants' motion

for summary judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 22). For the reasons set forth

below, Plaintiff's motion is denied and Defendants' motion is granted.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Complaint

Generally, liberally construed, Plaintiffs' Complaint alleges as follows. Morningstar is a

limited liability company organized under the laws of the State of New York and owns and

operates a long-term care facility located in Oswego, New York. (Dkt. No. 1, ¶ 1 [Pl.'s

Compl.].) Defendant Zucker is the Acting Commissioner of the New York State Department of

Health ("DOH") and, during the time in question, acted under color of state law in administering

the regulations, customers, policies, and practices material to Plaintiff's claims. (*Id.*, ¶ 2.)

Defendant Proud is the Commissioner of the State Office of Temporary and Disability

Assistance ("OTDA"). (*Id.*, ¶ 3.) OTDA is relevant to Plaintiff's claim because Defendant

Proud, during the time in question, acted under color of state law in administering the

regulations, customs, policies, and practices that are necessary for the implementation of a

system for determining Medicaid eligibility that complies with federal law. (*Id.*, ¶¶ 3-4.)

Darlene Huseby was admitted to Morningstar on or around June 4, 2013, after being

diagnosed with Septicemia. (*Id.*, ¶ 10.) At the time that she was admitted, she was fifty-eight

years old. (*Id.*) Ms. Huseby was admitted to Morningstar because it was deemed medically

necessary that she receive twenty-four hour skilled care and medical assistance.  (*Id.*, ¶ 11.)  Ms. Huseby is a "qualified individual with a disability," as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et. seq.* and 28 C.F.R. § 35.130 *et. seq.*  After Ms. Huseby's admission to Morningstar, it was determined that Ms. Huseby was insolvent and in need of Medicaid benefits to pay for her room, board, care and assistance at the facility.  (*Id.*, ¶ 13.)  Ms. Huseby executed a written agreement whereby she designated Morningstar as authorized representative of her right to pursue Medicaid benefits, pursuant to her rights under 42 C.F.R. § 435.923.  (*Id.*, ¶ 14.)

Before being admitted to Morningstar, Ms. Huseby used Fidelis Care ("Fidelis") for all of her medical needs.  (*Id.*, ¶ 15.)  Fidelis is a community sponsored health insurance program that provides personal, hospital, and emergency care to residents in the State of New York.  (*Id.*, ¶ 16.)  New York residents who have qualified for Fidelis should also qualify for regular Medicaid when they have to enter into a long-term care skilled nursing facility.  (*Id.*, ¶ 17.)  However, if a recipient of Fidelis' benefits enters such a long-term care facility, but is not expected to remain there permanently, then the long-term care facility must determine that the medical expenses are "medically necessary" in order for Fidelis to continue covering the individual's medical expenses.  (*Id.*, ¶ 18.)  After Ms. Huseby was admitted to Morningstar, Fidelis issued a denial letter on August 13, 2013, refusing to provide her with benefits while at Morningstar.  (*Id.*, ¶ 19.)

On August 4, 2013, Morningstar submitted an initial application for Medicaid benefits to Defendants, by and through DOH and/or OTDA, on behalf of Ms. Huseby.  (*Id.*, ¶ 26.)  To date, Defendants, by and through DOH and/or OTDA, have failed to issue an eligibility determination

regarding Ms. Huseby's application for Medicaid benefits, which has been pending for more than eighteen months.  (*Id.*, ¶ 27.)  Federal regulations require state agencies to furnish Medicaid benefits "with reasonable promptness to all eligible individuals" and "without delays caused by the agency's administrative procedures."  (*Id.*, ¶¶ 22, 25.)  Similarly, federal and state law require Defendants, through their local departments of social services ("DSS"), to make a final eligibility determination on an application promptly.  (*Id.*, ¶ 24.)  On October 10, 2014, Morningstar submitted a letter to DSS informing it that Morningstar had not received a decision regarding Ms. Huseby's eligibility for Medicaid benefits.  (*Id.*, ¶ 28.)  Defendants' failure to timely issue eligibility determinations on Ms. Huseby's application is a violation of federal and New York State law while also jeopardizing her health, safety, and well-being.  (*Id.*, ¶¶ 29-31.)

Based upon the foregoing factual allegations, Plaintiff asserts the following four claims: (1) that Defendants have failed to provide a system which ensures that medical assistance will be available, including, at the very least, the care and services listed in paragraphs (1) through (5) under 42 U.S.C. § 1396d(a), to all individuals meeting specified financial eligibility standards under 42 U.S.C. § 1396a(a)(10); (2) that Defendants' failure to afford Ms. Huseby public benefits and services, as well as the failure to grant her Medicaid benefits as a reasonable accommodation, constitutes actual or predictable discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132 *et. seq.*, and 28 C.F.R. § 35.130 *et seq.*; (3) that Defendants have deprived Ms. Huseby of the rights, privileges, and immunities secured by the Constitution, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983, by failing to issue a timely determination regarding her application for medicaid benefits; and (4) because Defendants have failed to timely issue a determination regarding Ms. Huseby's Medicaid

application, federal law mandates that her application be automatically approved.  (*Id.*, ¶¶ 32-38.)

Accordingly, Plaintiff requests a judgment from this Court declaring as follows: (1) that Defendants' failure to timely approve Ms. Huseby's Medicaid application violates the Medicaid Act and its implementing regulations, 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.911 (mandating eligibility determinations within ninety days), and § 435.930 (entitlement to benefits without any delay); (2) that Defendants have violated Ms. Huseby's rights under the ADA and 28 C.F.R. § 35.130; (3) that Defendants have violated Ms. Huseby's rights under the Due Process Clause of the Fourteenth Amendment; and (4) that Defendants shall issue a determination approving Ms. Huseby's application for Medicaid benefits within five days and that Ms. Huseby be given retroactive Medicaid benefits beginning from May 1, 2013.  (*Id.*, at 7-8.)

## B.   Defendants' Statement of Undisputed Material Facts

The following material facts were both asserted and supported by Defendants and not responded to by Plaintiff.[1]  Plaintiff is prosecuting this action to assert the rights of Darlene Huseby to receive Medicaid benefits for services provided by a residential healthcare facility under an agreement executed pursuant to 42 C.F.R. § 435.923.  (Dkt. No. 22, Attach. 2, ¶ 3

---

[1]      As discussed below in Part III.B. of this Decision and Order, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.  N.D.N.Y. L. R. 7.1(a)(3) (requiring that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises).

[Defs.' Rule 7.1 Statement].)  Ms. Huseby was enrolled in the Medicaid program from 2002 to 2004, and then again from 2007 until the date of her death on or about December 7, 2015.  (*Id.*, ¶ 4.)  New York State uses two primary methodologies to deliver and pay for the medical care provided to its Medicaid enrollees, which are "Fee-for-Service Medicaid" and "Medicaid Managed Care."  (*Id.*, ¶ 5.)  Most New York State Medicaid beneficiaries must join one of the program's mainstream Medicaid managed care plans.  (*Id.*, ¶ 6.)

During all times relevant to the Complaint, Ms. Huseby was enrolled in Fidelis, a mainstream Managed Care plan of the New York State Medicaid Program.  (*Id.*, ¶ 7.)  In March of 2013, DOH published "Policy & Billing Guidance" in its official newsletter update for providers of residential healthcare facilities that serve New York's Medicaid Managed Care enrollees.  (*Id.*, ¶ 9.)  This newsletter update is sent to every New York State Medicaid provider.  (*Id.*, ¶ 10.)  The guidelines provided information to assist residential healthcare facilities, such as Morningstar, in avoiding non-reimbursable patient stays for Medicaid Managed Care enrollees.  (*Id.*, ¶ 11.)

During all times relevant to the Complaint, Medicaid managed care organizations ("MCOs") were responsible for all medically necessary non-permanent stays in residential healthcare facilities for their enrollees, regardless of length of stay.  (*Id.*, ¶ 12.)  However, MCOs were not responsible for any days that an enrollee remained in a residential healthcare facility without MCO authorization.  (*Id.*, ¶ 13.)  Similarly, MCOs were not responsible for any days after a determination was made by the local Medicaid district that the stay was classified as permanent and that the enrollee would not be returning to the community.  (*Id.*)

During all times relevant to the Complaint, Morningstar was required to send a DOH form, entitled "LDSS-3559," to the local social service district for each individual upon initial admission who was enrolled in either Medicaid or Medicaid Managed Care and for every change in placement status, including an upgrade to permanent placement, readmission, transfer, discharge, or death after admission.  (*Id.*, ¶ 14.)  The LDSS-3559 form has a space to indicate the patient's placement status, including "short term rehabilitation" (stays of less than 29 consecutive days), "permanent" (when the individual is not expected to return to a community setting), or "non-permanent" (when the individual is expected to return to a community setting). (*Id.*, ¶ 15.)  If a patient's medical condition warranted a change in status to permanent placement in Morningstar's residential healthcare facility, Morningstar was responsible for notifying the local Medicaid district of her need for permanent placement on the LDSS-3559 form.  (*Id.*, ¶ 16.) Ms. Huseby's local Medicaid District was Oswego County DSS.  (*Id.*, ¶ 17.)

By notice dated June 14, 2013, Ms. Huseby's Medicaid Managed Care plan (i.e., Fidelis) authorized 14 days of admission to Morningstar and requested that, if additional inpatient days were needed, Morningstar submit additional clinical information by June 28, 2013, in support of such a request.  (*Id.*, ¶ 18.)  On or after July 19, 2013, Morningstar issued a LDSS-3559 form to Oswego County DSS informing it that, on July 19, 2013, Ms. Huseby was discharged from Morningstar to a local hospital.  (*Id.*, ¶ 19.)  On or after August 7, 2013, Morningstar submitted another LDSS-3559 to inform Oswego County DSS that, on August 7, 2013, Ms. Huseby had been re-admitted to Morningstar on a "non-permanent" basis and that it had also notified Fidelis of her re-admission.  (*Id.*, ¶ 20.)  By letter dated August 13, 2013, Fidelis denied coverage for Ms. Huseby's re-admission to Morningstar on the basis that it was not medically necessary and

that Ms. Huseby could be discharged to her home with the appropriate home services and skilled nursing visits. (*Id.*, ¶ 21.) Fidelis' letter notified Morningstar of Ms. Huseby's right to appeal its determination directly to Fidelis as well as her right to request a state administrative fair hearing before the DOH. (*Id.*, ¶ 22.) However, Morningstar and/or Ms. Huseby neither appealed the decision nor requested an administrative fair hearing. (*Id.*, ¶¶ 23-24.)

On or after January 10, 2014, Morningstar issued an LDSS-3559 informing the Oswego County DSS that, on January 10, 2014, Ms. Huseby was admitted to its facility on a "non-permanent" basis and that she was not enrolled in Managed Care. (*Id.*, ¶ 25.) Contrary to this statement, Ms. Huseby was enrolled in a Managed Care plan during that period of time (i.e., Fidelis). (*Id.*, ¶ 26.) During the times relevant to the Complaint, expenses incurred for non-permanent stays in residential healthcare facilities in Ms. Huseby's local Medicaid District (i.e., Oswego County DSS) were not subject to reimbursement under the Fee-for-Service Medicaid plan. (*Id.*, ¶ 27.) Morningstar never notified the Oswego County DSS that Ms. Huseby's status had changed from non-permanent to permanent, nor did it ever make such a request. (*Id.*, ¶ 28.) The DOH was not required to make a determination regarding Ms. Huseby's eligibility for benefits because Morningstar did not request that her status be changed to permanent. (*Id.*, ¶ 29.) Furthermore, OTDA had no involvement in this matter because Morningstar and/or Ms. Huseby never made a request for a fair hearing. (*Id.*, ¶ 30.) Ms. Huseby was discharged from Morningstar to her home in May of 2014, where she received in-home community based services that were covered by Fidelis from the date of her discharge until her death in December of 2015. (*Id.*, ¶ 31.)

## II.     PARTIES' BRIEFING ON THEIR RESPECTIVE MOTIONS

### A.     Plaintiff's Memorandum of Law

Generally, in its memorandum of law in support of its motion for a declaratory judgment, Morningstar asserts three arguments.  (Dkt. No. 20, Attach. 3 [Pl.'s Mem. of Law].)

First, Morningstar argues that Defendants are required to administer New York State's Medicaid program in compliance with the Medicaid Act and its implementing regulations, which require that eligibility determinations be made promptly.  (*Id.* at 6.)[2]  Morningstar argues that Defendants have failed to adhere to this requirement because Ms. Huseby has yet to receive a determination regarding her eligibility for Medicaid benefits.  (*Id.* at 7.)

Second, Morningstar argues that Defendants' failure to grant Ms. Huseby Medicaid benefits as a reasonable accommodation constitutes actual or predictable discrimination in violation of the ADA.  (*Id.*)  Furthermore, Morningstar argues that Defendants have violated Ms. Huseby's rights under the Due Process Clause of the Fourteenth Amendment by failing to timely issue a benefits determination.  (*Id.*)

Third, and finally, Morningstar argues that, under 42 U.S.C. § 1396a(a)(34), Defendants' failure to comply with the Medicaid Act requires that Ms. Huseby's application for benefits be automatically approved and that her benefits be applied retroactively to the date of her initial eligibility as well as three months before the date of her Medicaid application.  (*Id.* at 7-8.)

---

[2]     Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

**B.     Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for a Declaratory Judgment and in Support of Their Motion to Dismiss**

Generally, in their memorandum of law in opposition to Morningstar's motion for a declaratory judgment and in support of their motion to dismiss, Defendants assert seven arguments.  (Dkt. No. 22, Attach. 17 [Defs.' Mem. of Law].)

First, Defendants argue that the Complaint fails to present a justiciable case or controversy that "fairly traces" an injury to their actions (sufficient to confer subject-matter jurisdiction onto the Court) for the following three reasons: (1) Morningstar and/or Ms. Huseby never requested that her status be changed to a permanent residential care placement and, therefore, DOH's duty to make a prompt determination regarding her eligibility for benefits under 42 U.S.C. § 13969(a)(8) was never triggered; (2) Morningstar and/or Ms. Huseby never made a request for an administrative fair hearing before the DOH; and (3) to the extent that Morningstar purports to represent Ms. Huseby's prospective needs, her death prevents this Court from being able to award any prospective equitable relief.  (*Id.* at 5-6.)

Second, Defendants argue that Morningstar lacks standing to pursue civil rights claims on Ms. Huseby's behalf for the following four reasons: (1) although Ms. Huseby was alive at the time that Morningstar commenced this action, a party may not assert a civil rights claim on behalf of another; (2) Morningstar is purporting to act under what can be fairly characterized as a power of attorney but Ms. Huseby's death instantaneously revoked Morningstar's authority to act; (3) under New York law, any surviving right under 42 U.S.C. § 1983 belongs to the duly appointed personal representative of the decedent's distributive estate and the Complaint does not allege facts plausibly suggesting that Morningstar was appointed by the New York Surrogate's Court as a representative of Ms. Huseby's estate; and (4) to the extent that

Morningstar is seeking to pursue such claims in its own right, the Second Circuit has held that Medicaid providers do not have standing to bring § 1983 claims.  (*Id.* at 6-8.)

Third, Defendants argue that the Eleventh Amendment bars any claim for retroactive declaratory or injunctive relief because (1) the Eleventh Amendment bars federal suits against state officials in their official capacities that seek monetary awards from state funds, and (2) Morningstar is seeking retrospective declaratory relief in the form of compelling DOH to approve and issue payment of benefits related to Ms. Huseby's Medicaid application filed in 2013, which is barred by the Eleventh Amendment and *Ex Parte Young*.  (*Id.* at 8-9.)

Fourth, Defendants argue that the Complaint fails to allege facts plausibly suggesting a violation of Ms. Huseby's rights under the ADA because (1) it does not allege that her Medicaid benefits were denied due to her disability, (2) it does not allege that Defendants possessed a discriminatory animus towards persons with Ms. Huseby's alleged but unspecified disability, (3) the bald allegation that "the systematic and unjustified delay in processing of the Huseby Medicaid application . . . also constitutes unlawful discrimination in violation of the [ADA]" fails to meet the pleading standard required by the Second Circuit to state a valid ADA claim, and (4) Morningstar's demand that Defendants reasonably accommodate Ms. Huseby under the ADA by funding her stay at Morningstar would represent a grant of substantive rights, which the ADA does not provide.  (*Id.* at 10-11.)

Fifth, Defendants argue that the claims against Defendant Proud and/or OTDA should be dismissed because the OTDA had no involvement in the alleged underlying statutory or regulatory violations.  (*Id.* at 11.)  More specifically, Defendants argue that, because the Complaint does not allege that Morningstar requested a fair hearing regarding Ms. Huseby's

application for benefits, OTDA had no actual or personal involvement in the purposed denial of Ms. Huseby's civil rights.  (*Id.* at 12.)

Sixth, Defendants argue that Fidelis is a necessary party to this action because (1) Fidelis made the decision to deny coverage for Ms. Huseby's stay at Morningstar in August of 2013, and (2) the obligation to pay for Ms. Huseby's treatment at a non-permanent residential healthcare facility rests with her MCO, which is Fidelis.  (*Id.* at 12.)  Accordingly, Defendants argue that, because full relief cannot be accorded to the parties in the absence of Fidelis as a party to this action, dismissal of the Complaint is warranted under Fed. R. Civ. P. 12(b)(7) and 19(a)(1)(a).  (*Id.*)

Seventh, and finally, Defendants argue that Morningstar's motion is, in essence, a request for a writ of mandamus to compel them to issue a determination regarding Ms. Huseby's application and to hold a fair hearing.  (*Id.* at 13.)  Under these circumstances, Defendants argue that the Complaint should be dismissed because Morningstar failed to exhaust its administrative remedies under 10 N.Y.C.R.R. § 98-2.1 by failing to appeal Fidelis' denial of coverage directly to Fidelis.  (*Id.* at 13-14.)

### C.   Plaintiff's Reply Memorandum of Law and Opposition to Defendants' Motion to Dismiss

Generally, Morningstar asserts seven arguments in opposition to Defendants' motion to dismiss and in further support of its motion for a declaratory judgment.  (Dkt. No. 26 [Pl.'s Reply Mem. of Law].)

First, Morningstar argues that DOH's duty to make a prompt determination regarding Ms. Huseby's benefits application was triggered because Morningstar properly submitted a request on Ms. Huseby's behalf for permanent residential care placement.  (*Id.* at 6-7.)  More

specifically, Morningstar argues that (1) it submitted a LDSS-3559 form and supporting documentation needed to transition Ms. Huseby into permanent care status, (2) all of the forms sent to the Oswego County DSS by Morningstar indicated that Ms. Huseby's stay at its facility was permanent, and (3) Morningstar's legal counsel sent a letter dated August 4, 2014, to Julie Barry at DOH explaining Ms. Huseby's situation and that she was on long term care.  (*Id.* at 7.)

Second, Morningstar argues that it has standing to pursue its claims both on its own behalf as well as Ms. Huseby's because (1) 42 C.F.R. § 400.203 defines Medicaid "applicant" and includes "an individual (who need not be alive at the time of application) whose application is submitted through a representative or a person acting responsibly for the individual," (2) 42 C.F.R. § 435.923(a)(1) requires state agencies to permit applicants to designate an individual or *organization* to act responsibly on their behalf in assisting with the individual's application and other ongoing communications with the agency, (3) Ms. Huseby designated Morningstar as her authorized representative in 2013 and acted as her representative for more than one year before her death in 2015, (4) Defendants' argument that a designated representative of Ms. Huseby's estate is required to appear before her claims can be adjudicated is contrary to and preempted by federal law, and (5) the Supreme Court has held that, where (as here) an organization itself has suffered an injury, it has standing to pursue claims on its own behalf as well as on behalf of its members and constituents.  (*Id.* at 7-10.)

Third, Morningstar argues that the Eleventh Amendment does not bar its claims because federal courts have recognized that an action seeking to compel state officials to comply with decrees that are prospective in nature fall within the *Ex Parte Young* exception to the Eleventh Amendment.  (*Id.* at 10-13.)  Furthermore, Morningstar argues that, under *Morenz v. Wilson-*

*Coker*, 415 F.3d 230, 237 (2d Cir. 2004), the payment of Medicaid benefits is ancillary to the prospective relief that it has requested in this case, i.e., that Defendants make a determination regarding Ms. Huseby's application for Medicaid benefits.  (*Id.* at 14-15.)

Fourth, Morningstar argues that the Complaint alleges facts plausibly suggesting an ADA claim for the following three reasons: (1) at the time that Ms. Huseby was admitted to Morningstar, she was fifty-eight years old and suffering from numerous medical conditions, including septicemia, anemia, and severe malnutrition, and could not care for herself; and (2) Defendants failed to provide Ms. Huseby with public benefits and services to which she was entitled.  (*Id.* at 15-16.)

Fifth, Morningstar states that it does not oppose Defendants' request to dismiss Defendant Proud from this action.  (*Id.* at 16.)

Sixth, Morningstar argues that the Complaint should not be dismissed for failure to name Fidelis as a party because, unlike Fidelis, which issued a denial notice on August 13, 2013, denying Ms. Huseby's request for benefits, Defendants have failed to issue an eligibility determination regarding Ms. Huseby's application for Medicaid benefits that was filed in August of 2013.  (*Id.*)  Furthermore, Morningstar argues that, if the Court finds that Fidelis is a necessary party, N.Y. C.P.L.R. § 1001 requires, as a prerequisite to dismissal, that a defendant make a motion for an Order directing the plaintiff to join the omitted party within a specified time period and, if the Order is not complied with, then dismissal of the Complaint is warranted. (*Id.* at 17.)  Morningstar states that, should it be ordered to join Fidelis as a necessary party, it will promptly comply.  (*Id.*)

Seventh, and finally, Morningstar states that it agrees with Defendants' characterization of its motion as a request for a writ of mandamus but argues that it exhausted its administrative remedies because it filed an appeal with Fidelis on September 2, 2014, after receiving Fidelis' denial notice. (*Id.* at 17-18.) However, Morningstar argues that it never received a date for a fair hearing or any other response to its appeal. (*Id.* at 18.) Under these circumstances, Morningstar argues that it exhausted its administrative remedies and Defendants therefore had a duty to make an eligibility determination. (*Id.*) Because Defendants have not taken any action regarding Ms. Huseby's application, Morningstar argues that the application must be automatically approved. (*Id.*)

### D.    Defendants' Reply Memorandum of Law

Generally, Defendants assert the following six arguments in reply to Plaintiff's opposition memorandum of law. (Dkt. No. 28, Attach. 1 [Defs.' Reply Mem. of Law].)

First, Defendants argue that, although they have challenged whether Morningstar has authority to act on Ms. Huseby's behalf and whether this Court has jurisdiction to adjudicate this matter, Morningstar has not submitted a copy of the authorizing document regarding its representation or any other proof demonstrating that proper jurisdiction exists. (*Id.* at 5.) Furthermore, Defendants argue that it is not challenging Ms. Huseby's right to designate a representative under 42 C.F.R. Part 435 as Morningstar appears to argue, but is instead challenging whether Morningstar has standing to assert a civil rights claim on behalf of a deceased patient. (*Id.*) In this regard, Defendants reiterate their argument that Morningstar must be a designated representative of Ms. Huseby's estate, as defined by N.Y. E.P.T.L. § 11-4.7, in order to pursue § 1983 claims on her behalf. (*Id.* at 6.)

-15-

Second, Defendants argue that their statement of material facts in support of their alternative motion for summary judgment must be deemed admitted because (1) Morningstar received due notice of the consequences of failing to address Defendants' statement when Defendants served Morningstar's counsel with the statement of material facts pursuant to N.D.N.Y. L.R. 7.1(a)(3), which was accompanied by a notice of consequences that is generally provided to *pro se* litigants, and (2) Morningstar failed to refute and/or oppose their Rule 7.1(a)(3) Statement. (*Id.* at 7-8.)  Furthermore, Defendants argue that the untimely August 2014 correspondence attached as Exhibit B to Morningstar's opposition memorandum of law does not constitute a timely request for appeal; and, therefore, there is no justiciable case or controversy because (1) the injury complained of cannot be "fairly traced" to Defendants' actions but is instead the result of independent action taken by Morningstar or some other third party not before the Court, and (2) neither Morningstar nor Ms. Huseby sought an eligibility determination that Defendants failed to address and Defendants cannot be faulted for failing to act upon a non-existent application.  (*Id.* at 9.)

Third, Defendants argue that, because no genuine dispute of material fact exists, they are entitled to summary judgment and dismissal of the Complaint.  (*Id.* at 10-11.)

Fourth, Defendants reiterate their argument that the Eleventh Amendment bars the retroactive relief sought by Morningstar and further argue that the cases cited by Morningstar in support of its argument that its requested relief would not violate the Eleventh Amendment are inapplicable for two reasons: (1) Morningstar's argument that Defendants failed to take timely action on an application for Medicaid benefits is specious because Morningstar and/or Ms. Huseby failed to file a timely application in the first instance, and (2) Morningstar cannot

demonstrate "egregious or systemic failures" in complying with the 90-day fair hearing deadlines based upon Ms. Huseby's case alone.  (*Id.* at 11-12.)

Fifth, Defendants argue that the Complaint fails to allege facts plausibly suggesting a violation of the ADA because it fails to allege that they treated Ms. Huseby differently based on a disability.  (*Id.* at 12-13.)

Sixth, and finally, Defendants argue that, pursuant to 10 N.Y.C.R.R. § 98-2.1 and 18 N.Y.C.R.R. 360-10.8(d)(1) & (2), Morningstar has failed to exhaust its administrative remedies because it never appealed Fidelis' denial of coverage.  (*Id.* at 13.)  Furthermore, Defendants argue that, even if this failure could be overlooked, Medicaid does not permit payment for services which are not medically necessary, and no determination of medical necessity has been made in this case.  (*Id.* at 13-14.)

## III.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Dismissal for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to

relief." Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp. 2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id.* at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id.* at 1965.  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief."  *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted].  However, while the plausibility standard "asks for more than a sheer

possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability

requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint

is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement"

will not suffice. *Iqbal*, 129 S.Ct. at 1949  (internal citations and alterations omitted).  Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a

dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal

pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the

four corners of the complaint may be considered without triggering the standard governing a

motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,

(2) documents incorporated by reference in the complaint (and provided by the parties), (3)

documents that, although not incorporated by reference, are "integral" to the complaint, or (4)

any matter of which the court can take judicial notice for the factual background of the case.[3]

_____

[3]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit
to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-
573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion
to dismiss for failure to state a claim to a motion for summary judgment is not necessary under
Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached
to the complaint or answer, [2] documents incorporated by reference in the complaint (and
provided by the parties), [3] documents that, although not incorporated by reference, are

### B.      Legal Standard Governing Motions for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

---

"integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . . Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

[4]      As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[5]  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported

---

[5]  *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[6]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[7]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

---

[6]     Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[7]     *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

IV.     ANALYSIS

    A.     Whether There Is a Case or Controversy Sufficient to Confer Subject-Matter
           Jurisdiction Upon This Court

        After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Defendants' memoranda of law.  (Dkt. No. 22, Attach. 17, at 4-6 [Defs.'

Mem. of Law]; Dkt. No. 28, Attach. 1, at 9 [Defs.' Reply Mem. of Law].)  To those reasons, the

Court adds the following analysis, which is intended to supplement and not supplant Defendants'

reasons.

        "To establish that a case or controversy exists so as to confer standing under Article III, a

plaintiff must satisfy three elements: (a) the plaintiff must suffer an 'injury in fact,' (b) that

injury must be 'fairly traceable' to the challenged action, and (c) the injury must be likely to be

'redressed by a favorable decision' of the federal court." *Nat. Res. Defense Council, Inc. v. Food*

*& Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013).  Morningstar's claims fail to satisfy the second

and third of these requirements because, after reviewing Defendants' exhibits and their statement

of material facts, it is clear that Morningstar did not file a proper application for Medicaid

benefits to the Oswego County DSS on Ms. Huseby's behalf and, therefore, Defendants' duty to

make an eligibility determination was never triggered.  More specifically, Defendants have

submitted an official newsletter from the New York State Medicaid Program, which provides

guidance to residential healthcare facilities, such as Morningstar, for when an MCO, such as

Fidelis, denies coverage for a patient's stay at the facility.  According to the newsletter, where an

enrollee's status is non-permanent and coverage has been denied, the residential healthcare

facility should take the following action:

> if the [residential healthcare facility] disagrees with the MCO's
> decision, the [residential healthcare facility] should not seek to
> disenroll the individual from Medicaid managed care on the basis
> that the individual's status has changed to a permanent stay, nor
> should the [residential healthcare facility] seek payment from [Fee-
> for-Service] Medicaid, as the MCO is responsible for the non-
> permanent stay as long as it is medically necessary. . . .
> [Residential healthcare facilities], on the enrollee's behalf, may
> appeal the MCO's decision to deny a non-permanent stay by
> following the appeals information provided in the MCO's denial
> letter.  The enrollee or the enrollee's representative may also
> request a fair hearing. [Residential healthcare facilities] have
> appeal rights on their own behalf as described in the MCO's
> provider manual.

(Dkt. No. 22, Attach. 4, at 4 [NYS Medicaid Update].)

Based upon a review of the admissible record evidence, it is clear that Morningstar

should have followed these guidelines and/or procedure but did not do so.  First, Morningstar has

failed to submit admissible record evidence demonstrating that Ms. Huseby maintained anything

other than a non-permanent status during her stay at its facility.  Specifically, Morningstar argues

that it "did submit a DOH 3359 form and supporting documentation needed to transition [Ms.

Huseby] into permanent status.  All of the forms received by the local Oswego [DSS] for [Ms.

Huseby] from Morningstar indicated that Ms. Huseby's stay was 'permanent.'" (Dkt. No. 26, at

7 [Pl.'s Opp'n Mem. of Law].)[8]  However, Morningstar fails to cite any documentation in

support of this contention, which omission is conspicuous in light of the other DSS forms

submitted as exhibits by Defendants, all of which clearly indicate that Morningstar designated

Ms. Huseby's status as "non-permanent." (Dkt. No. 22, Attachs. 7-8, 10 [DSS Forms].)

---

[8]     The Court assumes that Plaintiff is referring to a DOH 3559 form.

Second, it is undisputed that, on August 13, 2013, Fidelis did not approve Morningstar's request for coverage regarding Ms. Huseby's stay at its facility.  (Dkt. No. 22, Attach. 9 [Fidelis' Denial Letter].)  Fidelis' letter advised Morningstar of its right to appeal, including that it had sixty business days to file any such appeal or, if Morningstar was acting on its own behalf, that it had forty-five days "to request an external appeal."  (*Id.*)  Once again, Defendants have submitted admissible record evidence in support of their argument that Morningstar never filed an appeal or requested a fair hearing.  (Dkt. No. 22, Attach. 3, ¶¶ 28, 38 [Carr Decl.]; Dkt. No. 22, Attach. 16, ¶ 11 [Purrot Decl.].)  Apparently recognizing that an appeal was not filed within sixty days after Fidelis' denial in August of 2013, Morningstar attempts to argue that it did file an appeal with Fidelis on September 2, *2014*, in response to a "August 2014 electronic denial, requesting a fair hearing with regard to that decision." (Dkt. No. 26, at 18 [Pl.'s Opp'n Mem. of Law].)  In support of this argument, Morningstar has attached a letter dated September 2, 2014, sent by its counsel to Fidelis requesting an appeal and/or fair haring in response to "an electronic denial of a request for a *redetermination* of the claim for Managed Care benefits submitted by [Morningstar] on behalf of Ms. Huseby." (Dkt. No. 26, at 21 [Ex. A to Pl.'s Opp'n Mem. of Law]) (emphasis added).  The "electronic denial" refers to an e-mail received by Morningstar's counsel from a "Provider Relations Representative" at Fidelis stating, in part, that "we are unable to *reconsider* these claims as clinical necessity has not been established."  (*Id.* at 24) (emphasis added).

The Court is unpersuaded that this was a proper request for an appeal and/or fair hearing, particularly because it was not filed within sixty days of Fidelis' denial in August of 2013.  (Dkt. No. 28, ¶¶ 8-10 [Carr Reply Decl.]); *see also Compania Del Bajo Caroni Caroni (Caromin),*

*C.A. v. Bolivarian Republic of Venezuela*, 341 F. App'x 722, 724 (2d Cir. 2009) (summary

order) ("A district court enjoys broad discretion (1) to consider arguments made for the first time

in a reply brief [and] (2) *to rely on evidence submitted with the reply papers*[.]") (internal

citations and quotation marks omitted) (emphasis added).  Moreover, the purported "electronic

denial" came from a provider relations representative rather than a department within Fidelis that

handles appeals or processes claims.  (Dkt. No. 28, ¶ 10 [Carr Reply Decl.].)  As the Court has

repeatedly observed in an analogous context (i.e., prisoner civil rights cases), if a party's receipt

of a denial of an untimely appeal were to exhaust the party's appeal requirement then the

deadline for the filing of the appeal would lose all meaning.  *Cf. Collins v. Caron*, 10-CV-1527,

2014 WL 296859, at *7 (N.D.N.Y. Jan. 27, 2014) ("[I]f exhaustion could be accomplished

simply through appealing the denial of a request for leave to file an untimely grievance, then the

time deadlines contained in the exhaustion process would lose all meaning."), *aff'd sub nom*

*Collins v. Doe*, 597 F. App'x 34 (2d Cir. 2015); *Smith v. Kelly*, 06-CV-0505, Decision and

Order, at 21 (N.D.N.Y. filed Oct. 30, 2013) (Suddaby, J.) ("It would eviscerate the exhaustion

requirement to deem an inmate to have exhausted his available administrative remedies where he

files a grievance four-and-a-half years late . . . , then skips the superintendent and appeals the

rejection of his grievance (based on untimeliness) to CORC, which never passes on the merits of

his grievance. If exhaustion were permissible under such circumstances, every inmate could

exhaust his available administrative remedies without fulfilling the functions of the exhaustion

requirement . . . .").

　　　　Accordingly, because Ms. Huseby's stay at Morningstar was non-permanent and

Morningstar failed to properly appeal or request a fair hearing in response to Fidelis' denial of

coverage, Defendants' duty to make an eligibility determination regarding Ms. Huseby's

Medicaid benefits was never triggered.  Therefore, Morningstar's "injury" is not "fairly

traceable" to the actions of Defendants.  *See M.M. v. Bd. of Educ. of Waterville Cent. Sch. Dist.*,

963 F. Supp. 185, 190 (N.D.N.Y. 1997) (Pooler, J.) (finding that no case or controversy existed

because "plaintiffs did not demonstrate a sufficient nexus between their injury and the state

defendants' actions").

       **B.**     **The Parties' Remaining Arguments**

       Having found that the Court lacks subject-matter jurisdiction to grant the relief requested

by Morningstar, there is no need to consider Defendants' remaining grounds for dismissal.

However, for purposes of thoroughness, and in the event that Morningstar appeals this decision

and the Second Circuit finds that subject-matter jurisdiction exists, the Court will briefly address

the strongest of Defendants' remaining arguments.

       **1.**     **Whether Morningstar Has Standing to Pursue § 1983 Claims on Ms. Huseby's Behalf**

       After carefully considering the matter, the Court answers this question in the negative for

the reasons stated by Defendants in their memoranda of law.  (Dkt. No. 22, Attach. 17, at 6-8

[Defs.' Mem. of Law]; Dkt. No. 28, Attach. 1, at 5-7 [Defs.' Reply Mem. of Law]); *see also Trs.*

*of Masonic Hall & Asylum Fund v. Leavitt*, 84-CV-0991, 2006 WL 1686405, at *14 (N.D.N.Y.

June 7, 2006) (Munson, J.) (stating that, "[i]n the Second Circuit, Medicaid providers such as

Plaintiffs do not have standing to bring § 1983 claims[,]" and holding that plaintiff did not have

standing to assert § 1983 claims on behalf of nursing home residents who were alive when the

action commenced because "a party may not assert a civil rights claim on behalf of another");

*Chobot v. Powers*, 169 F.R.D. 263, 265 (W.D.N.Y. 1996) (stating that, "[u]nder New York law,

a claim arising from the alleged violation of a plaintiff's civil rights survives the death of the

plaintiff and may be asserted or continued by the deceased plaintiff's personal representative. . . .

For a surviving action to continue after the death of the plaintiff, however, it must be pursued by

the personal representative of the deceased plaintiff's estate."); *accord*, *Vandermark v. Cty. of*

*Montgomery*, 11-CV-0090, 2012 WL 7160109, at *2 (N.D.N.Y. Dec. 13, 2012) (Peebles, M.J.)

(citing cases); *Campos v. Weissman*, 07-CV-1263, 2009 WL 7771872, at *4 (N.D.N.Y. Sept. 10,

2009) (Treece, M.J.).

### 2.      Whether Morningstar's ADA Claim Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated by Defendants in their memoranda of law.  (Dkt. No. 22, Attach. 17, at 10

[Defs.' Mem. of Law]; Dkt. No. 28, Attach. 1, at 12-13 [Defs.' Reply Mem. of Law].)  To those

reasons, the Court adds the following two points.

First, plaintiffs who seek to state a claim for disability under Title II of the ADA "must

demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are

subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit

from defendants' services, programs, or activities, or were otherwise discriminated against by

defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272-

73 (2d Cir. 2003).  As the third prong of this test makes clear, the denial of benefits must have

occurred "because of the disability." *Henrietta D.*, 331 F.3d at 278.

In the present case, Morningstar has failed to allege facts plausibly suggesting that

Defendants' failure to afford Ms. Huseby Medicaid benefits was because of a disability.  The

Complaint merely alleges, in conclusory fashion, that, "Defendants' failure to afford Ms. Huseby

public benefits and services, to which she is entitled under federal law, and failure to grant her

Medicaid benefits as a reasonable accommodation, constitutes actual or predictable

discrimination in violation of the ADA[.]" (Dkt. No. 1, ¶ 33 [Pl.'s Compl.].)  The fact that Ms.

Huseby was not afforded Medicaid benefits, in and of itself, does not plausibly suggest that it

was because of a disability.  *See Andino v. Fischer*, 698 F. Supp. 2d 362, 379 (S.D.N.Y. 2010)

(dismissing plaintiff's Title II ADA claim under Rule 12(b)(6) because, "[a]side from giving

conclusory statements that his request was denied because of his disability, Madison does not

give any reason or indication that the three Defendants actually denied him [his request for

reasonable accommodation] because he has PTSD.  None of the Defendants made any statements

to indicate the denial was based on his disability, and none of the DOCS paperwork or timing of

the denial shows that it was based on Madison's PTSD. . . . There is no logical nexus between

[PTSD] and the feed-in program as an accommodation"); *accord*, *Page v. V.T. Dep't of Corr.*,

11-CV-0187, 2012 WL 2153496, at *5 (D. Vt. May 4, 2012).

Second, the Court recognizes that the Second Circuit has cautioned district courts not to

interpret the "by reason of such disability" requirement "so narrowly that [the statute deprives]

the plaintiffs of reasonable accommodations to which the plaintiffs clearly would be entitled if

the social services system were functioning as intended."  *Henrietta D.*, 331 F.3d at 279.  In this

regard, Morningstar has alleged that "Defendants have failed to provide a system which ensures

that medical assistance will be available . . . to all individuals meeting specified financial

eligibility standards[.]" (Dkt. No. 1, ¶ 32 [Pl.'s Compl.]); *see also Ability Ctr. of Greater Toledo

v. Lumpkin*, 808 F. Supp. 2d 1003, 1023-24 (N.D. Ohio 2011) (holding that plaintiffs stated a

Title II ADA claim where defendant took over a year to make a determination regarding their

respective eligibility for Medicaid benefits, thereby depriving plaintiffs of benefits to which they otherwise would be entitled and preventing them from being able to participate fully in the Medicaid program).  However, as discussed above in Part IV.A. of this Decision and Order, the reason that Defendants did not issue an eligibility determination was because its duty to do so was never triggered rather than because of systemic failures.

Accordingly, for all of the foregoing reasons, the Court finds that Morningstar has failed to allege facts plausibly suggesting a violation of Title II of the ADA.

### 3.      Whether Morningstar Is Entitled to Mandamus Relief

After carefully considering the matter, the Court answers this question in the negative for the reasons stated by Defendants in their memoranda of law.  (Dkt. No. 22, Attach. 17, at 13-14 [Defs.' Mem. of Law]; Dkt. No. 28, Attach. 1, at 13-14 [Defs.' Reply Mem. of Law].)  In addition to those reasons, the Court notes that it has already found that Morningstar failed to exhaust its administrative remedies for the reasons discussed above in Part IV.A. of this Decision and Order and, therefore, mandamus relief is not appropriate.  *See Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 589-90 (7th Cir. 2014) (holding that plaintiff's failure to exhaust his administrative remedies barred his mandamus action seeking to compel Secretary of Health and Human Services to process his claims for Medicare reimbursement); *Ancillary Affiliated Health Servs., Inc. v. Shalala*, 165 F.3d 1069, 1070 (7th Cir. 1998) (rejecting the substantive-procedural distinction and holding that "even characterizing [plaintiff's] claim as a due process claim does not relieve it of its obligation to exhaust its administrative remedies"); *Abbey v. Sullivan*, 978 F.2d 37, 47 (2d Cir. 1992) (holding that plaintiffs were not entitled to mandamus relief because they failed to exhaust their administrative remedies under the Medicare Act); *accord*, *Ryan v. Burwell*, 14-CV-0269, 2015 WL 4545806, at *9 (D. Vt. July 27, 2015).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for a declaratory judgment (Dkt. No. 20) is **<u>DENIED</u>**;
and it is further

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint (Dkt. No. 22) is

**<u>GRANTED</u>**.  Plaintiff's complaint is dismissed, and the Clerk of the Court is directed to enter

judgment in favor of the Defendants.

Dated: September 27, 2016
       Syracuse, New York

                                         Hon. Glenn T. Suddaby
                                         Chief U.S. District Judge